IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | | |
|---|---|---|
| E.M.Z.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:26-CV-0161-BR |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION
OF THE COMMISSIONER OF SOCIAL SECURITY**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a decision by the

Commissioner of Social Security, who denied Plaintiff's application for disability insurance

benefits under Title II[2] of the Social Security Act ("the Act"). (ECF 1 *and* ECF 7-1 at 16).

Proceeding *pro se*, Plaintiff challenges the Commissioner's decision on multiple grounds. (*See*

ECF 9 at 1–2).

Because, for the reasons that follow, Plaintiff has not shown that he was prejudiced by the

ALJ either failing to apply the correct legal standards or to support her decision with substantial

evidence, the Commissioner's decision is AFFIRMED.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion. *See* U.S. Jud. Conf. Comm. on Ct. Admin. and Case Mgmt., Privacy Concern Regarding Social Security and Immigration Opinions, May 1, 2018 (memorandum).

[2] 42 U.S.C. §§ 401–33.

## I.  PLAINTIFF'S CONDITION

Plaintiff was born in May of 1968[3] and did not finish high school; he has some college education but no degree. (ECF 7-1 at 24, 76–77).[4] He suffers from back and shoulder pain that is complicated by degenerative disc disease, an osteochondroma (i.e., a benign bone tumor) on his left femur, another osteochondroma that has undergone surgical excision, fatty liver disease ("hepatic steatosis"), diabetes mellitus, bilateral hernias, and obesity. (*Id.* at 19–21). His brief alleges the severity of his pain significantly restricts his mobility and his regular daily activities. (ECF 9 at 8–10).

Plaintiff worked as a self-employed forklift repairman until January 5, 2017, when his pain became so great that he could no longer perform the necessary activities. (ECF 7-1 at 19). After that time, ownership of the business transferred to his wife, and his work has been limited to answering phone calls and relaying messages to and from customers. (*Id.* at 22, 24).

## II.  PROCEDURAL BACKGROUND

Plaintiff initially filed the disputed application to the Social Security Administration (the "Agency") on June 19, 2020, alleging disability beginning January 5, 2017. (ECF 7-1 at 94). After state agency denials of his claim both initially (*id.* at 93–105) and upon reconsideration (*id.* at 106–112), Plaintiff sought review of his application by an Administrative Law Judge ("ALJ") (*id.* at 173–76). After a telephonic hearing (*id.* at 72–92), the first ALJ assigned to his case issued an unfavorable decision on March 8, 2023. (*Id.* at 113–125).

---

[3] Unless otherwise specified, facts in this section are taken from the factual findings of the ALJ, which, as further explained below, must be affirmed if they are supported by any substantial evidence.

[4] Most pages in the administrative record (ECF 13) have been marked with multiple different, inconsistent page numbers by the various systems that produced the records in question; citations in this Opinion are not to these internal page numbers, but are rather to the page numbers generated by the Court's electronic case filing ("ECF") system, which can be found at the top of the page when a filing is accessed through ECF or PACER.

Plaintiff successfully petitioned for review to the Social Security Administration Appeals Council, which vacated the unfavorable decision, remanding the Plaintiff's claim for rehearing. (*Id.* at 129–33). Specifically, the Appeals Council noted that the decision was issued two months before Plaintiff turned 55 in May of 2023. (*Id.* at 131). The Social Security Regulations[5] divide claimants into categories by age, one of which runs from age 50 to 54 and another of which runs from age 55 to 60. 20 C.F.R. § 1563(d)–(e). The Appeals Council vacated the ALJ's decision because it did not take into consideration the impending change in age category, or explain how it impacted Plaintiff's disability status. (ECF 7-1 at 131–32).

On remand, the same ALJ held a new hearing (*id.* at 61–71) and issued a partially favorable decision on May 21, 2024 (*id.* at 134–47). In this decision, the ALJ found that Plaintiff had not been disabled from his alleged disability onset date, but that he became disabled on January 1, 2023. (*Id.* at 145–47). To achieve that result, the ALJ applied Social Security regulations "non-mechanically" and evaluated Plaintiff as if he turned 55 in January of 2023, rather than May of 2023. (*Id.* at 145). The result was a decision that would have awarded benefits beginning approximately six years after Plaintiff was asking them to begin. (*Id.* at 145–47).

Because he maintains that he should be awarded benefits beginning in 2017, Plaintiff again petitioned for review by the Appeals Council. (*Id.* at 260–62). The Appeals Council, however, determined that the ALJ had erred in Plaintiff's favor[6] in multiple ways. (*Id.* at 154–58). Specifically, the ALJ had held that Plaintiff's earnings during the period for which he sought

---

[5] The Agency has the authority to promulgate regulations implementing the Act under 42 U.S.C. § 405(a). In addition to traditional notice-and-comment regulations issued according to the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c), the Social Security Administration also publishes statements of policy or interpretation known as Social Security Rulings (each an "SSR"). 20 C.F.R. § 402.160(b)(1) (effective January 17, 2025; previously codified at 20 C.F.R. § 402.35).

[6] The Appeals Council began its order of remand by noting that the ALJ had informed Plaintiff that any appeal of the partially-favorable decision would result in a review of the entire record and could lead the Appeals Council to vacate the award of benefits. (ECF 7-1 at 156; *see id.* at 135).

disability benefits created a presumption that he was not disabled, but instead of evaluating that presumption, the ALJ proceeded through the remainder of the analysis "out of an abundance of caution." (*Id.* at 156–57; *see id.* at 139–40). Second, the ALJ gave no reason why January 1, 2023 should be considered the relevant date instead of Plaintiff's actual birthday, which had passed more than a year before the ALJ's decision issued. (*Id.* at 157; *see id.* at 145). Finally, though the Appeals Council found no fault resulting from the fact that the same ALJ had issued both prior decisions, it determined that the case should be assigned to a new ALJ moving forward. (*Id.* at 158).

The new ALJ, Judge Julie Nestler, held a second telephonic hearing, at which a vocational expert and Plaintiff, who—as in the instant judicial proceedings—at all times represented himself *pro se*, both testified. (*Id.* at 32–60). Judge Nestler then issued, on August 27, 2025, a complete denial of his application for disability. (*Id.* at 13–26). Plaintiff once again appealed the unfavorable decision to the Appeals Council, which this time declined to disturb the ALJ's findings. (*Id.* at 6–10).

The Appeals Council's December 12, 2025 denial of the request to review Judge Nestler's decision was the final decision of the Commissioner. (*Id.* at 5–8); *see* 42 U.S.C. §§ 405(g), 1383(c)(3) (establishing the subject matter jurisdiction of United States District Courts to review final decisions of the Commissioner) *and Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (confirming that the Appeals Council declining to review an ALJ decision establishes that ALJ decision as final). Plaintiff filed the instant action on January 21, 2026. (ECF 1).

Pursuant to the Northern District of Texas Special Order No. 3-350 (Sep. 11, 2023), this case was originally assigned to the undersigned United States Magistrate Judge to serve as presiding judge. Though notified of the right to withhold consent to the undersigned's jurisdiction (*see* ECF 2), neither party indicated non-consent, and the undersigned accordingly issues this Order and the associated Judgment pursuant to 28 U.S.C. § 636(c).

### III.    APPLICABLE LAW

A person may qualify for or disability insurance benefits under the Act if they are disabled. 42 U.S.C. §§ 423(a)(1). A person is disabled according to the terms of the Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); *accord* 20 C.F.R. §§ 404.1572(a)–(b).

ALJs use a standardized framework to determine whether an applicant is disabled under the Act:

> In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity.

*Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). Before proceeding to steps four and five, the ALJ must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1).

The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Agency to show that there is other substantial work in the national economy that the plaintiff is capable of performing. *Audler*, 501 F.3d at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates

the analysis. *Copeland*, 771 F. 3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2.d 641, 643 (5th Cir. 1984) (per curiam)).

### A.    Standard of Review

The Act grants United States District Courts the jurisdiction to review final decisions of the Agency. 42 U.S.C. § 405(g). When reviewing disability determinations made by the Commissioner, a court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). These limitations are imposed by statute:

> The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . and where a claim has been denied by the Commissioner . . ., the Court shall review only the question of conformity with [Agency] regulations and the validity of such regulations.

42 U.S.C. § 405(g). If the ALJ fails to apply the proper legal standard, a denial must be remanded and reconsidered. *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). If the ALJ applies the proper standards, however, and relies on any substantial evidence, the decision must be upheld. *Id*.

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion and constitutes more than a mere scintilla but less than a preponderance of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (cleaned up). "It must do more than create a suspicion of the existence of the fact to be established[.]" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The reviewing court may not reweigh evidence or substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Hardman*, 820 F.3d at 151. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).

Even a decision unsupported by substantial evidence will not always be vacated or reversed. An error is harmless and will not result in remand "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).[7] In short, a decision denying Social Security disability benefits is entitled to great deference and will only be overruled if the correct legal standards were not applied, or if the decision turned on a conclusion for which there was no substantial evidence.

B.    Substantial Gainful Activity

As noted above, the first step of the five-step process is to determine whether a claimant is currently working. A claimant cannot be considered disabled if they are presently engaged in "substantial gainful activity," which is defined as a work activity involving significant physical or mental abilities for pay or profit. 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *Masterson*, 309 F.3d at 271 n.2; *and* 20 C.F.R. §§ 404.1572(a)–(b). This is a two-prong test; work is "substantial" if it involves significant activities or abilities, and it is "gainful" if it results in earnings above a certain threshold. *Copeland*, 771 F.3d at 924–25.

The Social Security regulations establish a method for calculating the earnings threshold that will ordinarily show gainfulness. *See* 20 C.F.R. § 404.1574(b)(2). This calculation takes a $700.00 baseline and multiplies it by the ratio of a modern wage index to the national average wage index for 1998. *Id.* at 404.1574(b)(2)(ii)(B). The Agency publishes the resulting thresholds by year in the Program Operations Manual System ("POMS"). *Tables of SGA Earnings Guidelines*

---

[7] Failure to apply the correct legal standard can also be a harmless error; *Keel* itself upheld the harmless application of an erroneous step-two "severity" standard. *Keel*, 986 F.3d at 555–56. However, because an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[,]" a failure to apply the correct legal standard can only be sustained as a harmless error if sufficient reasoning is articulated in his decision to support it under the legal standard that he failed to apply. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

*and Effective dates Based on Year of Work Activity*, SSA POMS DI 10501.015, https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last accessed July 15, 2026).

With some exceptions, a claimant with earnings above the applicable threshold will be considered to have engaged in substantial gainful activity, and a claimant without such earnings will not. 20 C.F.R. §§ 404.1574(b)(2), 404.1574(b)(3)(i); *Copeland*, 771 F.3d at 924–27. The first exception applies to claimants without earnings, and it comes into play when "there is evidence indicating that [they] may be engaging in substantial gainful activity" despite their lack of earnings above the threshold. 20 C.F.R. § 404.1574(b)(3)(ii).[8] The second exception applies to claimants with earnings, and it triggers when such a claimant is "in a position to control when earnings are paid . . . or the amount of wages paid[.]" *Id.*[9]

When an exception to the general rule has been triggered, the regulations list two examples of other information that an ALJ will consider to determine whether a claimant has engaged in substantial gainful activity. The first is whether the claimant's "work is comparable to that of unimpaired people in [the claimant's] community who are doing the same or similar occupations[,]" and the second is whether the claimant's "work, although significantly less than that done by unimpaired people, is clearly worth the amounts" constituting the applicable earnings thresholds. *Id.* at 404.1574(b)(3)(ii)(A)–(B). These two examples of "other information" are not exhaustive. *Copeland*, 771 F.3d at 925.

---

[8] For a hypothetical illustrative of the purpose behind this exception, consider a claimant who could receive wages above the threshold, but who works for an employer that underpays them. By finding such a claimant has not engaged in substantial gainful activity and paying out benefits to them, the Agency would effectively subsidize the employer's choice to underpay the claimant. *See Barnhart v. Walton*, 535 U.S. 212, 225 (2002) (recognizing that the Agency established another subsection of this regulation in part to address "the problem of work disincentives").

[9] To the same end as the hypothetical in the previous footnote, consider an employer who, recognizing a claimant's impairments and wanting to contribute to their maintenance, pays the claimant higher wages than they would pay a non-disabled employee for the same work. By withholding benefits from such a claimant because they are engaged in gainful activity, the Agency would effectively penalize the employer's efforts to employ individuals with disabilities.

C.    Self-Employment as Substantial Gainful Activity

When a claimant's earnings result from self-employment, the regulations establish three further tests that an ALJ will use, in order, to determine whether that self-employment constitutes substantial gainful activity. 20 C.F.R. § 404.1575(a)(2). These tests are intended to determine "the value of [the claimant's] services to the business regardless of whether [they] receive an immediate income for [those] services." *Id.*

The first test is whether the claimant "render[s] services that are significant to the operation of the business and receive[s] substantial income from the business." *Id.* at 404.1575(a)(2)(i). If a claimant operates a business entirely by themselves, any services rendered are "significant," and if the business "involves the services of more than one person," the claimant's services are "significant" if the claimant "contributes more than half the total time required for the management of the business, or [renders] management services for more than 45 hours a month[.]" *Id.* at 404.1575(b)(1).[10] The claimant's income is "substantial" under this test if, after deducting certain expenses related to the claimant's self-employment, the amount they earn is above the thresholds used to determine substantial gainful employment generally, or else is comparable to the amount they earned before becoming impaired or to the amount earned by similarly situated unimpaired individuals. *Id.* at 404.1575(c).

If a claimant has not engaged in substantial gainful activity under the first test, the ALJ proceeds to the second and third tests. *Id.* at 404.1575(a)(2). The second test asks whether a claimant's "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community

---

[10] There is another prong to the definition of "significant services" in this test that only applies to farm landlords and is not at issue in this case. 20 C.F.R. § 404.1575(b)(2).

who are" similarly situated. *Id.* at 404.1575(a)(2)(ii). The third asks whether their "work activity, although not comparable to that of unimpaired individuals, is clearly worth the" ordinary threshold amounts "when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee" for the same work. *Id.* at 404.1575(a)(2)(iii).

### D.    The ALJ's Obligation to Develop the Record

Unlike the adversarial proceedings in Article III courts, proceedings before an ALJ are inquisitorial. *Carr v. Saul*, 593 U.S. 83, 89–90 (2021). The role of an ALJ is not to neutrally adjudicate the better of two competing sides, but is rather to "ensure that [the] administrative process is fair to claimants by conducting de novo, informal, non-adversarial hearings[.]" SSR 13-1p, 2013 WL 633939, *2; *accord* 20 C.F.R. § 404.900(b). This sometimes translates to an obligation to seek out evidence beyond what is submitted by the applicant. "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (internal citations and footnotes omitted).

The regulations detail the process that an ALJ will generally follow to discharge their duty to develop the record. The Agency will make an initial request for medical records, and then will follow up on that request once within ten to twenty calendar days, and will wait for at least ten calendar days from the follow-up for the source to provide the requested records. 20 C.F.R. § 404.1512(b)(i).

The Fifth Circuit has explained that the obligation on the ALJ is not necessarily to obtain all of a claimant's medical records, but is rather to develop all relevant facts. *Sun v. Colvin*, 793 F.3d 502, 509–10 (5th Cir. 2015). For example, an ALJ can make up for absent medical records by questioning a claimant in pursuit of the missing information. *Id.* Finally, as in other contexts,

an ALJ's failure to develop the record does not require reversal if that failure was harmless and did not prejudice the claimant. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

### E.    A Claimant's Symptoms

The Agency has established a two-step test for evaluating a claimant's own descriptions or statements of their impairments.[11] SSR 16-3p, 2017 WL 5180304, *3; *accord* 20 C.F.R. § 404.1529; *see also Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (per curiam) ("The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature.") (quoting *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991)).

The first step requires the ALJ to determine whether the claimant's medically determinable impairments could reasonably be expected to produce the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *3. The second step is for the ALJ to evaluate the intensity and persistence of a claimant's symptoms, and it requires the ALJ to determine "whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." SSR 16-3p, 2017 WL 5180304, at *5. If the claimant's statements about their impairments are inconsistent with the objective medical and other evidence, the ALJ will find the claimant's symptoms less likely to be disabling. *Id.* at *8; *accord* 20 C.F.R. §§ 404.1529(c)(4).

### IV.    THE ALJ'S FINDINGS

In reaching the conclusion that Plaintiff was not disabled, the ALJ found that Plaintiff's earnings history made him eligible for coverage through December 31, 2028 (Plaintiff's "date last insured"). (ECF 7-1 at 16). At step one of the five-step process, the ALJ found that Plaintiff, through self-employment, had engaged in substantial gainful activity from January of 2018

---

[11] *See* 20 C.F.R. §§ 404.1502(i) (defining "symptoms" as "your own description of your physical or mental impairment").

through December of 2023. (*Id.* at 18). Accordingly, the ALJ's subsequent analysis was limited to whether Plaintiff had been under a disability for any twelve-month period not covered by that window of substantial gainful activity. (*Id.* at 19).

At step two, the ALJ found that Plaintiff had the severe impairments of lumbar spondylosis, left femur osteochondroma, osteochondroma of the right leg (*status post* surgical excision), hepatic steatosis, diabetes mellitus, bilateral inguinal hernias, and obesity. (*Id.* at 19–21). At step three, the ALJ determined that these impairments were not, singularly or in combination, equivalent to any disabling impairment listed in the applicable regulations. (*Id.* at 21).

The ALJ then assessed Plaintiff as having:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can [only] occasionally climb ladders, ropes and scaffolds. He can frequently [but not constantly] climb ramps and/or stairs. He can [only] occasionally balance as defined in the Dictionary of Occupational Titles and Selected Characteristics of Occupations. He can [only] occasionally stoop, kneel, crouch and crawl.

(*Id.* at 21). In making this RFC finding, the ALJ found that Plaintiff's statements about his own symptoms could reasonably be caused by his impairments, but that the evidence was only partially consistent with the alleged "intensity, persistence, and limiting effects of these symptoms[.]" (*Id.* at 21–22). The ALJ also found that the medical opinions of the state agency medical consultants which limited Plaintiff to performing medium work were only partially persuasive, because evidence submitted at Plaintiff's hearing indicated the more extreme limitations included in his RFC. (*Id.* at 23).

At step four in the five-step process, the ALJ found that Plaintiff was capable of performing his past relevant work as a "Dispatcher, Maintenance Service," which is defined in the Dictionary of Occupational Titles (the "DOT") at section 239.367-014. (*Id.* at 24). Relying on testimony from the vocational expert and from Plaintiff, the ALJ found that such work "does not require the

performance of work-related activities precluded by" Plaintiff's RFC, and that Plaintiff could perform such work both as he had actually done in the past, and as it was generally performed in the national economy. (*Id.*).

At step five, the ALJ further found that Plaintiff's age, education, work experience, and RFC were such that other jobs also existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*). Specifically, the vocational expert identified three such jobs: cashier, laundry sorter, and produce sorter. (*Id.* at 24–25). Accordingly, the ALJ found that the Plaintiff had not been disabled for any continuous twelve-month period between January 5, 2017 and August 27, 2025. (*Id.* at 26).

## V.    ANALYSIS

Plaintiff contends that the ALJ erred by failing to obtain records from a medical provider, "Silver Chiropractic" (ECF 9 at 12–13), by improperly evaluating Plaintiff's self-employment earnings (*id.* at 6–8), by not fully crediting his symptoms when determining his RFC (*id.* at 8–12), by finding that Plaintiff could perform past relevant work (*id.* at 4–6), and, as a result of the other alleged errors, by incorrectly applying the Medical-Vocational Guidelines (*id.* at 13). Defendant has responded that the ALJ applied the correct legal standards and that her decision was in all respects supported by substantial evidence. (*See generally* ECF 10).

In Plaintiff's reply, he adds a new request for the Court to remand for the Agency to consider new evidence. (ECF 11 at 6–7).[12] Specifically, Plaintiff mentions a hospitalization for

---

[12] As the Supreme Court has explained, two different sentences in 42 U.S.C. § 405(g) establish two different kinds of remand from the district courts back to the Agency. *Melkonyan v. Sullivan*, 501 U.S. 89, 97–98 (1991). Applicable here, sentence six remands for consideration of new evidence, unless requested by the Commissioner before an answer has been filed, are limited to circumstances in which there is both (1) new material evidence and (2) good cause for the failure to incorporate that evidence in prior proceedings. 28 U.S.C. § 405(g); *see Istre v. Apfel*, 208 F.3d 517, 519–20 (5th Cir. 2000) (citing *Melkonyan*, 501 U.S. at 98–99). The inquiry into "good cause" concerns whether there is a "legitimate reason why this evidence was not produced earlier." Id. at 556.

stroke in June of 2025 that was not included in the record because the Plaintiff inadvertently failed to submit it and did not realize it might impact the ALJ's assessment of his diabetes. (*Id.* at 5–7). Plaintiff further states that he has obtained medical insurance coverage through Medicare that has enabled him to obtain medical care "that he previously could not access." (*Id.* at 7). He identifies the records from such treatment as another example of new evidence for the Agency to consider. (*Id.*).

Though courts will generally not consider arguments or issues raised for the first time in a reply brief, they retain the discretion to do so if they give the non-movant an opportunity to respond to the new argument. *Thompson v. Dallas City Att'ys Off.*, 913 F.3d 464, 471–72 (5th Cir. 2019). The Court in this case exercises its discretion to consider the merits of Plaintiff's reply-brief argument without a response from Defendant[13] because, as explained below, Plaintiff has not shown good cause for the failure to provide the evidence in question to the Appeals Council, so no response from Defendant is necessary. *See* 28 U.S.C. § 405(g); *Istre*, 208 F.3d at 519–20.

### A.    New Evidence

When Plaintiff received the most recent unfavorable ALJ decision, it was accompanied by a letter that explained the process for appealing to the Appeals Council. (ECF 7-1 at 13–15). Specifically, the letter explained to Plaintiff, "You may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**." (*Id.* at 14) (emphasis in original).

When Plaintiff submitted his request for the Appeals Council to review the ALJ's decision, one of his stated reasons was, "I also have new evidence to show my physical limitations." (*Id.* at 310). Immediately below that statement, on the form Plaintiff used, was a checkbox with the

---

[13] Defendant has not moved for leave to file a sur-reply or to strike Plaintiff's argument from his reply brief.

text, "Please grant me an extension of time to submit evidence or argument." (*Id.*). Plaintiff did not check that box. (*Id.*).

After the unchecked box, the form includes a section labeled, "**ADDITIONAL EVIDENCE**" that reads as follows:

> You may submit any additional evidence or argument to the Appeals Council. If you have additional evidence that relates to the period on or before the date of the hearing decision, you must inform the Appeals Council about it or submit it, or any other evidence or argument, when you submit this form unless you request an extension of time by checking the box above. This will ensure that the Appeals Council has the opportunity to consider the additional evidence before taking its action. . . . If you submit neither evidence nor a legal argument now or within any extension of time the Appeals Council grants, the Appeals Council will take its action based on the evidence currently in your file.

(*Id.*) (emphasis in original). There is no indication in the record that Plaintiff submitted evidence with his request for Appeals Council review.

To show good cause for his failure to submit the proposed evidence, Plaintiff points to his *pro se* status, arguing that he "did not understand the evidence-submission process, did not understand that the hospital records had to be separately identified and submitted," "or that the hospitalization would be important to the ALJ's evaluation of his diabetes-related complications, symptoms, treatment history, and functional limitations." (ECF 11 at 6–7).

Contrary to these arguments, Plaintiff was repeatedly advised of the need to submit the new evidence that he wanted the Appeals Council to consider. In fact, identical instructions appeared also in the letters accompanying the two previous ALJ decisions (ECF 7-1 at 114, 135) and on the form that Plaintiff used to challenge the first unfavorable ALJ decision (*id.* at 214). Similarly, though Plaintiff may not have known how the hospitalization would relate to the ALJ's decision before that decision issued, he did have that information once he had received the ALJ's decision, reviewed it, and decided to ask the Appeals Council for review. Accordingly, Plaintiff

has not given any legitimate reason why the evidence in question was not produced earlier and provided to the Agency, and sentence six remand is not warranted in this case.

### B.    The ALJ's Failure to Obtain Medical Records

As the Plaintiff acknowledges, the Agency requested medical records from Silver Chiropractic on June 11, 2025 and then followed up on June 16, 2025. (*See* ECF 9 at 12). In other words, the Agency requested medical records, and followed up on the request within ten to twenty business days, as required by the regulations. 20 C.F.R. § 404.1512(b)(i). As Plaintiff acknowledges, the Agency closed the request on July 14, 2025, well after the ten-day waiting period required by the regulations. (*See* ECF 9 at 12). The mere fact that the requested records were never provided by the source does not establish that the ALJ failed to adequately develop the record. *Sun*, 793 F.3d at 509–10. Because the ALJ discharged her duty to develop the record in accordance with the regulations, this argument does not provide a reason to overturn her decision.

### C.    Plaintiff's Self-Employment Earnings

As noted above, the ALJ found that Plaintiff engaged in substantial gainful activity for the years from 2018 through 2023. (ECF 7-1 at 18–19). Plaintiff does not challenge the income amounts on which the ALJ based her findings for those years. (*Compare id. and* ECF 9 at 7).[14] Those amounts are set out in the following table alongside the monthly and annual thresholds for substantial gainful employment in the subject year:

| Year | Monthly Threshold | Annual Threshold | Plaintiff's Earnings |
|------|-------------------|------------------|----------------------|
| 2018 | $1,180 | $14,160 | $26,543 |
| 2019 | $1,220 | $14,640 | $20,260 |

---

[14] Plaintiff did include a paragraph in his brief arguing that, "The tax records show why the ALJ could not simply rely on annual earnings figures." (ECF 9 at 7). There, Plaintiff shows that his earnings for each of the relevant years were reduced from his annual gross business receipts by substantial business expenses. (*Id.*; *see also* ECF 11 at 2–3). The Court does not interpret this as challenging the ALJ's calculation of his annual earnings because the amounts relied on by the ALJ were Plaintiff's net earnings for the relevant years, exclusive of business expenses, and those amounts exactly match the ones set forth by Plaintiff. (*Compare* ECF 9 at 7 *and* ECF 7-1 at 18–19).

| 2020 | $1,260 | $15,120 | $16,767 |
| 2021 | $1,310 | $15,720 | $27,311 |
| 2022 | $1,350 | $16,200 | $23,225 |
| 2023 | $1,470 | $17,640 | $20,593 |

*Tables of SGA Earnings Guidelines and Effective dates Based on Year of Work Activity*, SSA POMS DI 10501.015, https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015 (last accessed July 15, 2026); (ECF 7-1 at 18–19; *accord* ECF 9 at 7). As the table shows, Defendant's earnings were above the threshold for substantial gainful employment in each of the relevant years. Accordingly, if he also rendered services that were "significant," then his self-employment during those years qualifies as substantial gainful activity under the first relevant test. 20 C.F.R. § 404.1575(a)(2)(i).

The ALJ's discussion of whether Plaintiff provided significant services was limited to a one-sentence finding that "he has provided significant services in speaking to customers and referring them for mechanic work." (ECF 7-1 at 19). In other words, the ALJ did not determine, as required by the first self-employment test, that Plaintiff "contributes more than half the total time required for the management of the business, or [renders] management services for more than 45 hours a month[.]" 20 C.F.R. § 404.1575(b)(1).

Accordingly, the ALJ was required to proceed to the second and third self-employment tests, and determine whether Plaintiff's work activity is comparable to that of similarly-situated unimpaired individuals, and whether it, even in not comparable under the second test, is clearly worth the threshold amounts. *Id.* at 404.1575(a)(2)(ii)–(iii). The ALJ in this case found that Plaintiff's work, which consists entirely of speaking to customers and referring them for mechanic work, satisfied the third test because it was worth the reported earnings amounts, which (as explained above) exceed the ordinary thresholds. (ECF 7-1 at 19). To support this finding, the ALJ noted that Plaintiff "has not provided any evidence that he was overpaid for the services

rendered[,]" and as a result, "[t]here is no evidence the services he rendered were not worth the amounts paid." (ECF 7-1 at 19).

Plaintiff mainly challenges this finding as inadequately explained, or else as failing to fully appreciate the limited nature of his services to the business. (ECF 9 at 6–8, *and* ECF 11 at 2–3). He otherwise characterizes the ALJ's finding as "assuming that all business income reflected Plaintiff's personal work." (ECF 11 at 3). However, as noted above, the ALJ did not rely on gross business income when evaluating Plaintiff's earnings, and it was Plaintiff's own burden to prove that he had not engaged in substantial gainful activity. *Audler*, 501 F.3d at 448. Because Plaintiff did not provide any evidence that his work was incomparable to that of similarly situated unimpaired people, or else that it was not worth the amounts he earned for it,[15] the ALJ correctly determined that Plaintiff was ineligible for disability from 2018 through 2023.

### D.    Plaintiff's Symptoms and RFC

Plaintiff challenges the ALJ's RFC determination as "unsupported because it omitted Plaintiff's need to lie down for hours, stop for two to three hours or longer, alternate positions, limit standing and walking, and limit use of his left arm." (ECF 9). Plaintiff testified that he had these limitations at each of his three hearings before the ALJs. (ECF 7-1 at 80–82, 64–66, *and* 43–48).

The ALJ explicitly acknowledged Plaintiff's testimony about these limitations in her decision. (*Id.* at 22). She summarized that testimony as follows:

> During the hearing, the claimant testified he has pain in his lower back and legs after driving for 15 to 20 minutes, depending on the day. . . . He could lift [objects no heavier than] a phone and paper beginning in 2017. His right arm is his stronger arm, he could lift 3 to 5 pounds. He has too much pain in his left arm to lift anything.

---

[15] By way of example, if Plaintiff had provided any evidence to the ALJ that an unimpaired person, performing only the same phone services for another business as he performed for his business, would be paid less than the annual thresholds in the table above, that evidence might have enabled a finding that Plaintiff's work was not substantial gainful activity. The record contains no evidence of that or any similar sort.

He is right handed. He needs to both lay down and sit down. He is uncomfortable in any positions. Laying down helps his back. . . . He has to walk around on his feet. If he is having a good day, he can sit and move from one place to another. Every day he needs to lay down for 2-3 hours at a time. He is weak during the day, because he has not slept. Walking is very painful for him. He hurts and he cannot move when his back spasms. He sits most of the day. He can walk through the house.

(*Id.*).

The ALJ then found, in keeping with the regulations and as noted above, that Plaintiff's severe impairments could cause these symptoms, but that his statements about the intensity, persistence, and limiting effects about the symptoms were partially inconsistent with the evidence. (*Id.*). Specifically, the ALJ noted that "physical exams throughout the record have been fairly benign." (*Id.*). Those exams indicated "a decreased range of motion to the lumbar spine at times" and associated difficulties with movement, but "neurological exams were otherwise benign with intact strength, a normal gait, and a lack of neurological deficits." (*Id.*). The ALJ noted that Plaintiff did not use or appear to need an assistive device, and had no record of falls, no tenderness, and no muscle spasms. (*Id.* at 22–23).

For those reasons, the ALJ found that Plaintiff was limited in ways that were less extreme or severe than he indicated in his own testimony. (*Id.*). In making that finding, and then in assessing an RFC that included significant, but not prohibitive limitations, the ALJ complied with the regulations, applied the correct legal standard, and supported her decision with substantial evidence. Accordingly, this Court will not vacate her decision on this ground.

### E.      Plaintiff's Past Relevant Work

Plaintiff argues that the ALJ erred when she found he could perform past relevant work as a maintenance service dispatcher, because "Plaintiff performed limited phone and referral activity only a few hours per week, did not supervise workers, did not perform repairs, did not prepare bids, did not negotiate contracts, and did not determine pricing or parts." (ECF 9 at 6).

This list of things that Plaintiff did not do in the relevant period—the years between his alleged disability onset in 2017 and Plaintiff's third hearing in 2025—invokes Plaintiff's questioning of the vocational expert during that hearing. (*See* ECF 7-1 at 50–59). Over the course of that questioning, Plaintiff successfully narrowed the expert's testimony, from classifying Plaintiff's work in that time as a "Supervisor, Garage" (DOT 620.131-014), to "Contractor" (DOT 182.167-010), to the final answer of "Dispatcher, Maintenance Service" (DOT 239.367-014).

The DOT defines a maintenance service dispatcher as a clerk who "[r]eceives telephone and written orders from plant departments for maintenance service, . . . and relays requests to appropriate maintenance division[,]" "[k]eeps record of requests and services rendered[,]" and "[r]equisitions supplies for maintenance and clerical workers." U.S. Dept. of Labor, DICTIONARY OF OCCUPATIONAL TITLES, § 239.367-014 (4th Ed., 1991).

In other words, the ALJ characterized the work Plaintiff had done since 2017 as a job that did not require supervising others, performing repairs, preparing bids, negotiating contracts, or determining pricing or parts. (*See* ECF 9 at 6). The job that the ALJ treated as Plaintiff's past relevant work was instead "limited to taking calls and referring customers," as Plaintiff characterizes his own role in the business. (*See* ECF 11 at 2).

Because the occupational definition utilized by the ALJ referred to work Plaintiff has actually done long enough to learn it and (as explained above) at the level of substantial activity, it properly referred to Plaintiff's past relevant work. Additionally, because Plaintiff was still performing that work, the ALJ properly concluded that Plaintiff could still perform past relevant work. Plaintiff has not shown any reason to overturn the ALJ's decision.

F.    The Medical-Vocational Guidelines

Finally, Plaintiff challenges the ALJ's finding that a person with his age, education, work experience, and RFC could perform other jobs that existed in significant numbers in the national

economy, like cashier, laundry sorter, or produce sorter. (*See* ECF 7-1 at 24–25). Plaintiff challenges this finding as undermined by the errors he alleges on other grounds, because "[i]f Plaintiff's limited post-2017 phone and referral activity was not substantial gainful activity and did not qualify as past relevant work, and if Plaintiff was limited to light or less than light work without transferable skills," the Guidelines would support a finding of disability. (ECF 9 at 13).

As explained above, the ALJ properly evaluated not only Plaintiff's past work, both for determination of his substantial gainful activity and for determination of whether he could perform past relevant work, but also properly evaluated Plaintiff's symptoms and RFC. Accordingly, Plaintiff has identified no error that would warrant vacatur of the ALJ's decision and remand for a new application of the Guidelines.

## VI.    CONCLUSION

In summary, the ALJ's decision applied the correct legal standards, was supported by substantial evidence, and did not include any error that Plaintiff has shown was prejudicial. Accordingly, the decision of the Commissioner is AFFIRMED. Judgment will be entered accordingly.

IT IS SO ORDERED.

ENTERED July 16, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE